## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| **INSYS THERAPEUTICS, INC.,** *et al.*, | **Case No. 19-11292 (JTD)** |
| **Liquidating Debtors.**[1] | **(Jointly Administered)** |
| **INSYS LIQUIDATION TRUST, by and through WILLIAM H. HENRICH, as LIQUIDATING TRUSTEE,** | |
| **Plaintiff,** | **Adversary No. 21-50557 (JTD)** |
| **v.** | |
| **JOHN N. KAPOOR,** | |
| **Defendant.** | |

---

## OPENING BRIEF IN SUPPORT OF TRUSTEE'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**REID COLLINS & TSAI LLP**
Eric D. Madden (admitted *pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
Telephone: (214) 420-8900

Keith Y. Cohan (admitted *pro hac vice*)
Ryan M. Goldstein (admitted *pro hac vice*)
Morgan M. Menchaca (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy, C-300
Austin, TX 78746
Telephone: (512) 647-6100

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dabbott@morrisnichols.com
mtalmo@morrisnichols.com

---

[1] The Liquidating Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155).

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ............................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDING.................................................. 2

III.    SUMMARY OF THE ARGUMENT .................................................................... 2

IV.     STATEMENT OF FACTS .................................................................................. 3

        A.  Kapoor Implements an Illegal Sales and Marketing Strategy........................... 3

        B.  Insys Agrees to Advance Kapoor's Legal Fees. ............................................... 6

        C.  Kapoor Is Convicted of Knowingly Violating the Law. ................................... 7

        D.  Insys Advances Payment for Kapoor's Legal Expenses................................. 10

V.      LEGAL STANDARD........................................................................................ 12

VI.     ARGUMENT .................................................................................................... 12

VII.    CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......................................................................................... 12

*Associated Milk Producers, Inc. v. Parr*,
528 F. Supp. 7 (E.D. Ark. 1979) ..................................................................... 15

*Breeden v. Bennett* (*In re Bennett Funding Grp., Inc.*),
367 B.R. 269 (Bankr. N.D.N.Y. 2007 .......................................................... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................... 12

*Evans v. Avande, Inc.*,
2022 WL 2092126 (Del. Ch. June 9, 2022) ................................................... 13

*Henglein v. Colt Indus. Operating Corp.*,
260 F.3d 201 (3d Cir. 2001) ............................................................................ 16

*Hermelin v. K-V Pharm. Co.*,
54 A.3d 1093 (Del. Ch. 2012) .......................................................... 3, 13, 15

*Higgins v. Walls*,
901 A.2d 122 (Del. Super. Ct. 2005) .............................................................. 16

*In re Indian Palms Assocs.*,
61 F.3d 197 (3d Cir.1995) ................................................................................. 3

*Jean  Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006) ............................................................................ 16

*Kapoor v. United States*,
142 S. Ct. 2811 (2022) ........................................................................................ 2

*Lee v. United States*,
142 S. Ct. 2812 (2022) ........................................................................................ 2

*Perryman v. Stimwave Techs. Inc.*,
2020 WL 7240715 (Del. Ch. Dec. 9, 2020) ................................................... 17

*Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860 (3d Cir. 1986) ............................................................................ 12

*Reddy v. Elec. Data Sys. Corp.*,
  2002 WL 1358761 (Del. Ch. June 18, 2002) .................................................... 17

*Stockman v. Heartland Indus. Partners, L.P.*,
  2009 WL 2096213 (Del. Ch. July 14, 2009) .................................................... 13

*Sun-Times Media Grp., Inc. v. Black*,
  954 A.2d 380 (Del. Ch. 2008) (Strine, V.C.) .................................... 13, 15, 17

*United States ex rel. Doe v. Heart Solution, PC*,
  923 F.3d 308 (3d Cir. 2019) .......................................................................... 16

*United States v. Babich et al.*,
  No. 1:16-cr-10343-ADB (D. Mass.) ................................................................ 8

*United States v. Gurry et al.*,
  427 F. Supp. 3d 166 (D. Mass. 2019) .............................................................. 6

*United States v. Simon et al.*,
  12 F.4th 1 (1st Cir. 2021) ..................................................................... *passim*

## Statutes

18 U.S.C. § 371 ........................................................................................................ 8
18 U.S.C. § 1341 ................................................................................................. 8, 15
18 U.S.C. § 1343 ................................................................................................. 9, 15
18 U.S.C. § 1346 ............................................................................................. 8, 9, 15
18 U.S.C. § 1349 ...................................................................................................... 8
18 U.S.C. § 1962(d) ............................................................................................ 8, 9
21 U.S.C. § 841(a)(1) ............................................................................................ 15
8 *Del. C.* § 145(a) .......................................................................................... 2, 12, 13

## Rules

Fed. R. Bankr. P. 7056 ........................................................................................... 12
Fed. R. Civ. P. 56 .................................................................................................... 12
Fed. R. Evid. 201(b) ................................................................................................. 3

William H. Henrich, in his official capacity as Liquidating Trustee (the "<u>Trustee</u>") of the Insys Liquidation Trust (the "<u>Trust</u>"), respectfully submits this opening brief in support of the *Trustee's Motion for Partial Summary Judgment* (the "<u>Motion</u>").

## I.     <u>PRELIMINARY STATEMENT</u>

1.     Through the Motion, the Trustee seeks expeditious resolution to this adversary proceeding by securing a judgment ordering Defendant John N. Kapoor ("<u>Kapoor</u>") to repay the debtor advances for his criminal defense costs that gave rise to this suit.  While the Trustee also has asserted Chapter 5 claims to avoid and recover those payments, granting partial summary judgment on the recoupment claim (Count 6) would effectively end this litigation, as the Trustee could not obtain a double recovery.[2]

2.     Notwithstanding the breadth of the multi-faceted criminal scheme that Kapoor engineered, the instant Motion is narrow and simple, involving no genuine factual disputes.  As a matter of law under section 145 of the Delaware General Corporation Law ("<u>DGCL</u>"), the bylaws of debtor Insys Therapeutics Inc. ("<u>Insys</u>"), and an express indemnity agreement between Kapoor and Insys (the "<u>Indemnity Agreement</u>"), Kapoor became legally obligated to return advances he received from Insys upon any final adjudication that he acted in bad faith or with reasonable cause to know his actions were unlawful.  Kapoor was later convicted of crimes requiring a finding of specific intent to commit such unlawful acts, and that conviction was upheld on appeal by the U.S. Court of Appeals for the First Circuit and is not subject to any further appeals.  Because his final criminal conviction is conclusive in determining that Kapoor must return the advances he received from Insys, the Trustee is entitled to the requested relief.

---

[2] If the Motion is granted, the Trustee will likely dismiss his remaining claims in this proceeding.

## II.  NATURE AND STAGE OF THE PROCEEDING

3.  The Trustee commenced this adversary proceeding on June 10, 2021 against Kapoor by filing the Original Complaint [D.I. 1].  On July 29, 2022, the Trustee filed the First Amended Complaint [D.I. 35] (the "Complaint").  On August 12, 2022, Kapoor filed his Answer to the First Amended Complaint [D.I. 36] (the "Answer").

4.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Trustee moves for partial summary judgment.  The Motion seeks summary judgment solely with respect to the Trustee's claim for recoupment of advancements (Count 6).

5.  The Trustee respectfully submits this brief in support of his Motion.

## III.  SUMMARY OF THE ARGUMENT

6.  Kapoor is the former Chairman and CEO of debtor Insys Therapeutics, Inc. ("Insys").  In 2019, Kapoor was convicted of participating in a racketeering conspiracy that involved bribing doctors to prescribe Insys's proprietary opioid drug and defrauding insurance companies to pay for it.  *See generally United States v. Simon et al.*, 12 F.4th 1 (1st Cir. 2021), *cert. denied sub nom. Kapoor v. United States*, 142 S. Ct. 2811 (2022), *and cert. denied sub nom. Lee v. United States*, 142 S. Ct. 2812 (2022).  Kapoor has exhausted all appeals of his conviction, which in turn is now a final judgment.

7.  During the government's investigation of Insys and Kapoor, and pursuant to Insys's bylaws and its Indemnity Agreement with Kapoor, the company made advancements to law firms and vendors to cover Kapoor's legal expenses.  In the Indemnity Agreement, Kapoor expressly agreed to repay the funds advanced by Insys if a final adjudication determined that Kapoor acted in bad faith or with reasonable cause to believe that his conduct was unlawful, making him ineligible for indemnification.  *See* 8 *Del. C.* § 145(a).

2

8.      A jury and an appellate court reviewing that verdict each found that Kapoor knowingly and willfully violated the law in pursuit of the conspiracy's illicit aims.  This serves as conclusive evidence that Kapoor was acting with a non-indemnifiable state of mind and is not entitled to indemnification under Delaware law.  *See Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1112 (Del. Ch. 2012).  Kapoor cannot re-litigate the underlying facts of his conviction in this proceeding.  And Kapoor's conviction is now final and non-appealable.

9.      Because it has been finally adjudicated and conclusively established that Kapoor acted with a non-indemnifiable state of mind, Kapoor must repay Insys all amounts that the company advanced on his behalf.  Through this Motion, the Trustee seeks to recoup more than $6 million of such advancements from Kapoor.

## IV.      STATEMENT OF FACTS

### A.      Kapoor Implements an Illegal Sales and Marketing Strategy.

10.      Insys was a pharmaceutical company founded by Kapoor, who at certain times served as its Executive Chairman, Chief Executive Officer, and controlling shareholder.  (Ans. ¶ 2.)  Insys spent years developing Subsys, a proprietary sublingual fentanyl spray, also known as a Transmucosal Immediate-Release Fentanyl ("TIRF") drug.  (Ans. ¶ 12.)

11.      In January 2012, the FDA approved Subsys for the narrow indication of the management of "breakthrough cancer pain" in cancer patients dealing with persistent cancer pain.  *Simon*, 12 F.4th at 15.[3]  Insys was permitted to market Subsys only for this specific, on-label use.  *Id.*  Given the risk of abuse, addiction, and overdose inherent to fentanyl-based products, the FDA-approved label for Subsys stated that "[t]he initial dose of Subsys to treat episodes of breakthrough cancer pain is always 100 mcg." *Id.*

---

[3] The Bankruptcy Court may take judicial notice of facts that are not subject to reasonable dispute.  *In re Indian Palms Assocs.*, 61 F.3d 197, 205 (3d Cir.1995); *see also* Fed. R. Evid. 201(b).

12.     Insys launched Subsys on March 26, 2012.  (Ans. ¶ 13.)  Kapoor was dissatisfied with the level of sales of Subsys and called it "the worst f[***]ing launch in pharmaceutical history."  *Simon*, 12 F.4th at 16.  Consequently, in the fall of 2012, Kapoor hired a new sales management team and overhauled the company's sales and marketing strategy.  *Id.*

13.     Kapoor blamed the perceived failure of the Subsys's launch on patients "starting on too low of a dose."  *Id.*  Kapoor quickly sought to "move patients to higher doses" using "'effective dose,' messaging."  *Id.* at 26.  The message to prescribers was that 100- or 200-microgram doses indicated on the FDA-approved label were not effective.  *Id.* at 17.  "Kapoor's mantra was to 'push the dose,'" because patients on higher doses were more likely to refill their prescriptions.  *Id*. at 26.  Sales representatives were informed each time a practitioner wrote a prescription for a 100mcg or 200mcg dose and were required to report back within 24 hours on how the practitioner planned to "titrate" the patient to a higher, "effective dose."  *Id.* at 17  Insys also paid bonuses to sales representatives who got practitioners to prescribe higher doses.  *Id.*  The U.S. Court of Appeals for the First Circuit found that the evidence showed Kapoor led the "effective dose" messaging effort and "plainly supports a finding that Kapoor intended practitioners to prescribe Subsys as much as possible, even when there was no medical necessity for the drug or the dosage prescribed."  *Id.*at 26.

14.     Kapoor also pushed the use of a "speaker program" as a tool to bribe doctors.  The speaker program was first designed as a peer-to-peer education program to allow doctors to inform other healthcare practitioners about Subsys.  *Id.* at 17.  A month after its launch, Kapoor put a hold on the program to clarify its objective: Kapoor "'wanted every speaker to write' Subsys prescriptions" in exchange for the honoraria they received from Insys.  *Id.*  Kapoor demanded— over objections about its illegality—that Insys track and analyze the return-on-investment ("ROI")

for each speaker. *Id.* at 17–18. Speakers who did not prescribe enough Subsys to generate twice as much revenue as they were being paid were not removed from the speaker program. *Id.* On the other hand, doctors who had agreed to prescribe large amounts of Subsys in exchange for speaker honoraria—so-called "whales"—were offered a deal: "'the more they wr[ote] and the more they increase[d] the dose, the more they'[d] get paid to speak." *Id.* The speaker events themselves had little to no attendance and were mostly "social outings." *Id.*at 19.

15. Kapoor closely monitored the success of the speaker program, the effective dose campaign and Insys's other marketing efforts. "Kapoor demanded information on 'every [Subsys] script that was written' and 'every doctor that wrote it.'" *Id.* at 25. Kapoor required highly detailed information, including spreadsheets that parsed the data by doctor, and tried to identify "whales." *Id.* Kapoor's assistant would print out sales reports about the top-prescribing physicians each week and put them on Kapoor's desk to review. *Id.* The "whales" were frequently discussed on the daily 8:30 a.m. management call in which Kapoor participated. *Id.* at 18. Kapoor was well aware that certain of these "whales" were "pill mill" doctors—doctors known to readily prescribe drugs with few, if any, questions asked. *Id.* at 24–25. Despite this knowledge, Kapoor pushed the bribing of these "whales" through speaker programs. *Id.*at 25–26. As the First Circuit summarized, "[t]he record is replete with support for the proposition that Kapoor intended physicians to write medically illegitimate prescriptions" and "sought out pill mill doctors." *Id.* at 24.

16. Although the speaker program increased Subsys prescriptions, Subsys was often denied coverage by health insurers for off-label subscriptions. *Id.* at 19. In late 2012, Kapoor directed the launch of the Insys Reimbursement Center ("IRC") to bring the insurance approval process in-house. *Id.* at 20. Kapoor consistently demanded approval rates upwards of 90%. *Id.* At Kapoor's request, the IRC compiled a list of what information each insurer required before it

would approve Subsys. *United States v. Gurry et al.*, 427 F. Supp. 3d 166, 181–82 (D. Mass. 2019), *aff'd in part, rev'd in part sub nom. United States v. Simon et al.*, 12 F.4th 1 (1st Cir. 2021). To achieve that goal, the IRC developed strategies to mislead health insurers into approving coverage for Subsys for off-label uses, including misleading insurers into believing the Insys representative was calling from a doctor's office rather than the IRC, and misleading insurers into believing the patient had cancer when the patient did not. *Id.* at 20–21. Kapoor was briefed on these misleading strategies, which were frequently discussed on the daily 8:30 a.m. management call. *Gurry*, 427 F. Supp. 3d at 182.

**B.      Insys Agrees to Advance Kapoor's Legal Fees.**

17.      The Insys bylaws generally required the company to advance expenses to its directors or officers in any legal proceeding to which the director or officer was a party by reason of the fact that the person is or was a director or officer of Insys.[4]  Such advancements of legal expenses, as required by the DGCL, were permissible "only upon delivery to the corporation of an undertaking, by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final [non-appealable] judicial decision" that the director or officer is not entitled to indemnification.[5]

18.      On April 11, 2013, Kapoor entered the Indemnity Agreement with Insys.[6]  (Ans. ¶ 52.)

19.      The Indemnity Agreement provides that Kapoor is entitled to indemnification from Insys to the fullest extent permitted by the DGCL for any legal proceeding related to his position

---

[4] Ex. 1 (Insys Bylaws) § 45(c).

[5] *Id.* (tracking the language of sections 145(e) and (a) of the DGCL).

[6] The Trustee expressly reserves all rights to assert, as stated in the Complaint, that the Indemnity Agreement was not enforceable under several theories.  These arguments are not relevant to this motion, and the Trustee's claims are pleaded in the alternative.

at Insys.[7]  But the agreement also provides that Kapoor is not entitled to indemnification with respect to conduct found in a final judgment to be "in bad faith, knowingly fraudulent, or deliberately dishonest or [to have] constituted willful misconduct . . . ."[8]

20.     With respect to advancements, the Indemnity Agreement provides that Insys would advance Kapoor's legal fees for any legal proceeding related to his position at Insys.[9]  As required by Insys's bylaws and the DGCL, this advancement obligation was subject to the condition that Kapoor provide "an undertaking to repay the advancement of expenses if and to the extent that it is ultimately determined by a court of competent jurisdiction in a final judgment, not subject to appeal, that [Kapoor] is not entitled to be indemnified by the Company."  The Indemnity Agreement includes the following undertaking by Kapoor:

> [Kapoor] acknowledges that the execution and delivery of this Agreement shall constitute an undertaking providing that Indemnitee shall, to the fullest extent required by law, repay the advance if and to the extent that it is ultimately determined by a court of competent jurisdiction in a final judgment, not subject to appeal, that [Kapoor] is not entitled to be indemnified by the Company.[10]

## C.     Kapoor Is Convicted of Knowingly Violating the Law.

21.     On December 10, 2013, Insys received a subpoena from the United States Department of Health and Human Services Office of Inspector General (the "HHS Subpoena") requesting documents related to the sale and marketing of Subsys.  (Ans. ¶ 35.)

22.     On February 29, 2016, Kapoor retained Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") on an hourly basis to represent him in connection with the DOJ's investigation of Insys, which arose out of the HHS Subpoena.  (Ans. ¶ 54.)

_____

[7] Ex. 2 (Indemnity Agreement) § 3(a).

[8] *Id.* § 10(a)(iii).

[9] *Id.* § 6.

[10] *Id.* §6.

23.     In December 2016, as a result of the federal investigation, several of Insys's officers and employees were indicted in a criminal action filed by the United States Attorney's Office for the District of Massachusetts (the "Criminal Action") for various charges, including fraud and racketeering.  Specifically, the indictment in the Criminal Action criminally charged Michael Babich (former Chief Executive Officer), Alec Burlakoff (former Vice President), Richard Simon (former National Sales Director), Sunrise Lee (former Regional Sales Director), Joseph Rowan (former Regional Sales Director), and Michael Gurry (former Vice President).  *See United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.) [D.I. 1].

24.     On October 24, 2017, Kapoor was indicted in a superseding indictment in the Criminal Action.  (Ans. ¶ 39.)  The superseding indictment charged Kapoor with participating in a racketeering conspiracy, *see* 18 U.S.C. § 1962(d); mail fraud conspiracy, *see id.* § 1349; wire fraud conspiracy, *see id.*; mail fraud conspiracy, *see id.*; and conspiracy to violate the Anti-Kickback Statute, *see id.* § 371.  *See United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.) [D.I. 183].

25.     In or around November 2017, Kapoor retained Ropes & Gray LLP ("Ropes & Gray") to represent him as "local counsel" in the Criminal Action.  (Ans. ¶ 72.)

26.     On September 11, 2018, a grand jury returned the Second Superseding Indictment against Kapoor, Babich, Burlakoff, Gurry, Simon, Lee, and Rowan, charging them with engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  *Simon*, 12 F.4th at 21 & n.2; *see also United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.) [D.I. 419].  The indictment alleged that the conspiracy was effected through acts of mail fraud, *see* 18 U.S.C. § 1341; honest services mail fraud, *see id.* §§ 1341, 1346; wire fraud, *see id.* § 1343; honest services wire fraud,

*see id.* §§ 1343, 1346; and Controlled Substances Act ("CSA") violations, *see* 21 U.S.C. § 841(a)(1). *See Simon*, 12 F.4th at 21.

27.     Before trial, Babich and Burlakoff pleaded guilty to conspiring to bribe practitioners to prescribe Subsys. *Id.* at 21 n.2.

28.     On May 2, 2019, Kapoor was convicted by a jury for violating 18 U.S.C. § 1962(d) by engaging in a racketeering conspiracy by devising a scheme to bribe doctors to unnecessarily prescribe Subsys and defraud insurers to cover the cost of Subsys prescriptions.[11] (Ans. ¶ 2.) The jury convicted Kapoor on all five racketeering predicates alleged in the indictment: mail fraud, wire fraud, honest services fraud, and CSA violations.[12]

29.     The remaining defendants in the Criminal Action—Simon, Lee, Rowan, and Gurry—were also convicted of participating in the conspiracy.[13]

30.     On January 23, 2020, Kapoor was sentenced to 66 months in prison, three years of supervised release, a fine of $250,000, restitution of $59.7 million, and forfeiture of $1.9 million.[14] Kapoor's restitution obligation was later reduced to $48.3 million.[15]

31.     On August 25, 2021, the First Circuit affirmed Kapoor's conviction. *See generally Simon*, 12 F.4th 1. The First Circuit's decision also reinstated the jury's findings that Kapoor violated the predicate racketeering acts of violating the CSA and honest services fraud, which the district court had vacated in post-trial motion practice. *Id.* at 28.

---

[11] Ex. 3 (Jury Verdict Form) at 6.

[12] *Id.*

[13] *Id.* at 1-5.

[14] Ex. 4 (Kapoor Judgment).

[15] Ex. 5 (Post-Mandate Order) at 1. Kapoor's restitution amount was reduced by 19.1% because the First Circuit found that restitution should only apply to the 80.9% of Subsys claims that went through the IRC. *See id.* at 9-13; *Simon*, 12 F.4th at 65.

32. Kapoor sought review by the U.S. Supreme Court. On June 13, 2022, the Supreme Court denied Kapoor's petition for a writ of certiorari.[16] Kapoor is currently serving his prison sentence. (Ans. ¶ 64.)

**D. Insys Advances Payment for Kapoor's Legal Expenses**

33. Pursuant to its bylaws and the Indemnity Agreement, Insys made advancements to Kapoor's criminal defense counsel and their vendors during the DOJ's criminal investigation and in the subsequent Criminal Action.

34. Each of the recipients listed in the table below received advancements from Insys in connection with Kapoor's criminal defense in the federal investigation and Criminal Action. Paul Weiss and Ropes & Gray served as Kapoor's criminal defense counsel during the government's investigation and the Criminal Action (Ans. ¶¶ 54, 72); TrustPoint International ("TrustPoint") and eTera Consulting ("eTera") served as eDiscovery vendors for Kapoor's counsel; and Berkeley Research Group ("BRG") provided consulting services for Kapoor's defense in the Criminal Action.[17]

35. These advancements are listed in the table below (collectively, the "Advancements"), including the date of payment, the method of payment, and the amount paid[18]:

| ADVANCEMENTS | | | | | |
|---|---|---|---|---|---|
| **Payment Date** | **Method of Payment** | **Amount** | **Recipient** | **Payment Report Exhibit No.** | **Bank Statement Exhibit No.** |
| 06/17/16 | Check (#455) | $41,067.48 | TrustPoint | Ex. 8 | Ex. 13 at 3 |
| 07/01/16 | Check (#494) | $21,026.27 | TrustPoint | Ex. 8 | Ex. 14 at 3 |
| 07/08/16 | Check (#534) | $35,411.24 | TrustPoint | Ex. 8 | Ex. 14 at 3 |
| 07/08/16 | Wire transfer | $590,406.15 | Paul Weiss | Ex. 8 | Ex. 14 at 2 |
| 07/29/16 | Wire transfer | $176,291.89 | Paul Weiss | Ex. 8 | Ex. 14 at 2 |

---

[16] Ex. 6 (Letter from Clerk of the Supreme Court of the United States).

[17] Ex. 7 (Housley Declaration) ¶ 13.

[18] *Id.* ¶ 15.

| | | ADVANCEMENTS | | | |
|---|---|---|---|---|---|
| **Payment Date** | **Method of Payment** | **Amount** | **Recipient** | **Payment Report Exhibit No.** | **Bank Statement Exhibit No.** |
| 07/29/16 | Check (#602) | $8,969.52 | TrustPoint | Ex. 8 | Ex. 15 at 3 |
| 08/22/16 | Wire transfer | $1,333,270.14 | Paul Weiss | Ex. 8 | Ex. 15 at 2 |
| 09/08/16 | Check (#805) | $9,285.02 | TrustPoint | Ex. 8 | Ex. 16 at 4 |
| 09/23/16 | Wire transfer | $94,885.67 | Paul Weiss | Ex. 8 | Ex. 16 at 3 |
| 09/23/16 | Check (#862) | $7,020.77 | TrustPoint | Ex. 8 | Ex. 17 at 3 |
| 10/28/16 | Check (#954) | $74,048.48 | Paul Weiss | Ex. 8 | Ex. 18 at 2 |
| 10/28/16 | Check (#953) | $7,128.27 | TrustPoint | Ex. 8 | Ex. 18 at 2 |
| 11/18/16 | Check (#1022) | $118,000.63 | Paul Weiss | Ex. 8 | Ex. 18 at 2 |
| 12/09/16 | Check (#1070) | $6,297.02 | TrustPoint | Ex. 8 | Ex. 19 at 3 |
| 01/20/17 | Check (#1203) | $118,569.59 | Paul Weiss | Ex. 9 | Ex. 20 at 3 |
| 01/20/17 | Check (#1204) | $9,170.80 | TrustPoint | Ex. 9 | Ex. 20 at 3 |
| 02/03/17 | Check (#1257) | $156,857.65 | Paul Weiss | Ex. 9 | Ex. 21 at 3 |
| 02/17/17 | Check (#1310) | $9,584.78 | TrustPoint | Ex. 9 | Ex. 21 at 3 |
| 02/24/17 | Check (#1367) | $39,425.61 | Paul Weiss | Ex. 9 | Ex. 22 at 3 |
| 02/24/17 | Check (#1371) | $12,652.09 | TrustPoint | Ex. 9 | Ex. 22 at 3 |
| 03/24/17 | Check (#1469) | $13,156.21 | Paul Weiss | Ex. 9 | Ex. 23 at 3 |
| 04/04/17 | Check (#1485) | $7,075.62 | TrustPoint | Ex. 9 | Ex. 23 at 3 |
| 04/21/17 | Check (#1564) | $209,129.50 | Paul Weiss | Ex. 9 | Ex. 23 at 3 |
| 05/05/17 | Check (#1626) | $6,856.87 | TrustPoint | Ex. 9 | Ex. 24 at 3 |
| 06/02/17 | Wire transfer | $247,364.66 | Paul Weiss | Ex. 9 | Ex. 25 at 2 |
| 07/07/17 | Check (#1928) | $14,864.94 | TrustPoint | Ex. 9 | Ex. 26 at 3 |
| 08/09/17 | Check (#2066) | $83,671.68 | Paul Weiss | Ex. 9 | Ex. 27 at 5 |
| 08/09/17 | Check (#2074) | $10,423.86 | TrustPoint | Ex. 9 | Ex. 27 at 5 |
| 10/06/17 | Check (#2313) | $22,668.08 | TrustPoint | Ex. 9 | Ex. 28 at 3 |
| 10/13/17 | Check (#2351) | $11,217.78 | TrustPoint | Ex. 9 | Ex. 28 at 3 |
| 11/02/17 | Check (#2430) | $22,088.73 | TrustPoint | Ex. 9 | Ex. 29 at 3 |
| 03/02/18 | Check (#2894) | $21,846.82 | TrustPoint | Ex. 10 | Ex. 30 at 3 |
| 03/09/18 | Check (#2930) | $33,356.27 | TrustPoint | Ex. 10 | Ex. 30 at 3 |
| 06/01/18 | Check (#15106) | $444,924.81 | eTera | Ex. 11 | Ex. 31 at 9 |
| 06/05/18 | Wire transfer | $1,785,406.75 | Ropes & Gray | Ex. 11 | Ex. 31 at 5 |
| 09/07/18 | Wire transfer | $145,642.22 | BRG | Ex. 11 | Ex. 32 at 7 |
| 09/07/18 | Wire transfer | $724,015.09 | eTera | Ex. 11 | Ex. 32 at 7 |
| 03/01/19 | Check (#4152) | $32,807.95 | BRG | Ex. 12 | Ex. 33 at 4 |
| **TOTAL** | | **$6,705,886.29** | | | |

36.     The Trustee now seeks to recover the Advancements from Kapoor, as offset by amounts received by the Trustee from any of the recipients in settlements with the Trustee.

## V.      LEGAL STANDARD

37.     Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court's role is to "determine whether there is a genuine issue for trial." *Id.* at 249.  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). When a movant's evidence demonstrates the lack of a genuine issue of material fact, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 327.

## VI.      ARGUMENT

38.     Under Delaware law, Insys's bylaws, and Kapoor's Indemnity Agreement, Kapoor is not entitled to be indemnified by Insys in connection with the DOJ's criminal investigation or the Criminal Action because of his final, non-appealable criminal conviction.  In turn, Kapoor now must repay the fees advanced for his criminal defense.

39.     Section 145(a) of the DGCL states that a corporation may only indemnify a director or officer for expenses incurred in a legal proceeding related to his position at the company "if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful."  8 *Del. C.* § 145(a).  Put

12

differently, "the statute *prohibits* a corporation from indemnifying a corporate official who was not successful in the underlying proceeding and has acted, essentially, in bad faith." *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1094 (Del. Ch. 2012) (emphasis original). The corporation bears the burden of proof by the preponderance of the evidence that the would-be indemnitee is not entitled to indemnification. *Evans v. Avande, Inc.*, 2022 WL 2092126, at *3 (Del. Ch. June 9, 2022).

40.    Section 145(a) of the DGCL provides that a conviction alone does not create a presumption that the indemnitee had a non-indemnifiable state of mind. 8 *Del. C.* § 145(a). However, Delaware courts have uniformly reasoned that "if the prosecution or the plaintiff in the underlying proceeding established that the indemnitee acted in bad faith, particularly through a showing that the indemnitee knew that his actions were damaging to the company or that his conduct was unlawful, 'that would be ***conclusive evidence*** that the [indemnitee] is not entitled to indemnification.'" *Hermelin*, 54 A.3d at 1112 (emphasis added) (citing *Sun-Times Media Grp., Inc. v. Black*, 954 A.2d 380, 401 n.83 (Del. Ch. 2008) (Strine, V.C.)); *see also Stockman v. Heartland Indus. Partners, L.P.*, 2009 WL 2096213, at *15 (Del. Ch. July 14, 2009) (noting that the record in a plenary proceeding "can serve as a basis for evaluating whether the indemnitee met the §§ 145(a) and (b) standard for good faith and law compliance"). In other words, "[t]reating a finding of "bad faith" in an underlying proceeding as conclusive evidence of a non-indemnifiable state of mind in the related proceeding for indemnification under section 145(a) of the DGCL is simply a fundamental application of *res judicata*." *Hermelin*, 54 A.3d at 1112.

41.    Insys's bylaws and Kapoor's Indemnity Agreement likewise prohibit indemnification for bad faith or intentionally wrongful conduct. The bylaws only allow indemnification of directors and officers "to the extent not prohibited by the DGCL or any other

applicable law."[19]  And the Indemnity Agreement excepts from indemnification conduct found to be "in bad faith, knowingly fraudulent or deliberately dishonest or [to have] constituted willful misconduct."[20]

42.     Kapoor's criminal racketeering conviction, for which the prosecution had to show beyond a reasonable doubt that Kapoor acted in bad faith and knowingly violated the law, conclusively proves that he is not entitled to indemnification.  In the Criminal Action, the government had to prove that there existed a conspiracy "to increase profits for Insys by conducting the affairs of Insys through bribes, fraud, and the illicit distribution of Subsys."[21]  Then the government had to prove that Kapoor "***knowingly and willfully*** agreed to become a member of the conspiracy" and then carried it out or agreed that other members of the conspiracy would carry it out.[22]

43.     The jury was instructed that "'knowingly' means to act voluntarily and intentionally and not because of mistake or accident," and that "'willfully' means to act voluntarily and intelligently ***and with the specific intent that the underlying crime be committed that is to say, with bad purpose, either to disobey or disregard the law*** not to act by ignorance, accident, or mistake."[23]  Further the jury was instructed that to prove Kapoor's membership in the conspiracy, "the evidence must establish  that [he] participated with knowledge of at least some of the purposes or objectives of the conspiracy and ***with the intention of aiding in the accomplishment of those***

---

[19] Ex. 1 (Bylaws) § 45(a).

[20] Ex. 2 (Indemnity Agreement) § 10(a)(iii).

[21] Ex. 34 (Jury Charge) at 36:6-11.

[22] *Id.* (Jury Charge) at 38:15-23.

[23] *Id.* (Jury Charge) at 39:4-11 (emphasis added).

*unlawful goals*."[24] In other words, the government needed to show that Kapoor intentionally joined the conspiracy "*with an understanding of the unlawful character of the conspiracy*."[25]

44.    In addition, the government had to prove beyond a reasonable doubt that Kapoor joined the conspiracy with the "*specific intent*" that he or other members of the conspiracy would commit a "pattern of racketeering activity," specifically: illegal distribution of a controlled substance, *see* 21 U.S.C. § 841(a)(1); mail fraud, *see* 18 U.S.C. § 1341; wire fraud *see id.* §§ 1343, 1346; honest services mail fraud, *see id.* §§ 1341, 1346; and honest services wire fraud, *see id.* §§ 1343, 1346.[26]

45.    The jury unanimously found that the government proved beyond a reasonable doubt that Kapoor was "guilty of conspiring to conduct or to participate, directly or indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity."[27]  The jury unanimously found that Kapoor "agreed that he or another conspirator would *intentionally commit*" all five types of racketeering activity alleged.[28]

46.    Kapoor's conviction, which required the government to show that he had the specific intent to violate the law, is "conclusive evidence of a non-indemnifiable state of mind." *Hermelin*, 54 A.3d at 1112.  In other words, the conviction proves that Kapoor "'is not entitled to indemnification'" by Insys under Delaware law.  *Id.* at 1112 (citing *Sun-Times*, 954 A.2d at 401 n.83); *see also Associated Milk Producers, Inc. v. Parr*, 528 F. Supp. 7, 8 (E.D. Ark. 1979) (holding that a deliberate violation of the law "cannot be 'in good faith'" and precluded indemnification,

---

[24] *Id.* (Jury Charge) at 40:1-6 (emphasis added).

[25] *Id.* (Jury Charge) at 41:1-3 (emphasis added).

[26] *Id.* (Jury Charge) at 41:18-42:6 (emphasis added).

[27] Ex. 3 (Jury Verdict Form) at 6.

[28] *Id.* (Jury Verdict Form) at 6 (emphasis added).

even where the employee believed his illegal actions were for the benefit of the corporation). Moreover, Kapoor's conviction precludes him from indemnification under Insys's bylaws and his Indemnity Agreement.[29]

47.    Kapoor apparently still maintains his innocence (Ans. ¶¶ 2, 60, 62),[30] but his final, non-appealable criminal conviction collaterally estops him from now re-litigating any facts that were proven or admitted as an element of his crimes.[31] Here, Kapoor was found guilty beyond a reasonable doubt of intentionally committing multiple crimes as part of a years-long racketeering conspiracy. He cannot dispute those findings in this proceeding, which turns on substantially identical issues. *See United States ex rel. Doe v. Heart Solution, PC*, 923 F.3d 308, 317 (3d Cir. 2019) (defendant previously convicted of Medicare fraud was collaterally estopped from denying the falsity and knowledge elements of civil claims under False Claims Act); *see also Breeden v. Bennett* (*In re Bennett Funding Grp., Inc.*), 367 B.R. 269, 291 (Bankr. N.D.N.Y. 2007) (collateral estoppel entitled trustee to summary judgment on breach of fiduciary duty claim against former officers where criminal convictions in federal court had determined substantially identical issues); *Higgins v. Walls*, 901 A.2d 122, 137-38 (Del. Super. Ct. 2005) (holding that a prior criminal conviction precluded defendant in civil suit from re-litigating a fact where "the fact-finder's guilty verdict reflects a finding beyond a reasonable doubt" of that fact).

---

[29] Ex. 1 (Bylaws) § 45(a); Ex. 2 (Indemnity Agreement) § 10(a)(iii).

[30] On the other hand, Kapoor has expressly reserved his right to invoke his Fifth Amendment privilege against self-incrimination. (Ans. at 1 n.1.)

[31] Collateral estoppel (or issue preclusion) bars re-litigation of an issue when (i) the identical issue was previously adjudicated; (ii) the issue was actually litigated; (iii) the previous determination was necessary to the decision; and (iv) the party being precluded from re-litigating the issue was fully represented in the prior action. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (citing *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)). The Third Circuit also considers whether the party being precluded "had a full and fair opportunity to litigate the issue in question in the prior action" and "whether the issue was determined by a final and valid judgment." *Id.* (citations omitted).

48.     Kapoor's judgment is final, and he has exhausted every avenue of appeal. At each stage, the jury's verdict was upheld in full or left undisturbed—most recently by the United States Supreme Court, which denied Kapoor's petition for a writ of certiorari. Adjudication of Kapoor's criminal case has reached its final, non-appealable conclusion, and consequently this Court should now determine that Kapoor is not entitled to indemnification. *See Sun-Times*, 954 A.2d at 383 (holding in a dispute over director indemnification and advancement under section 145 of the DGCL and company's bylaws that "the final disposition of a proceeding in this context is the final, non-appealable conclusion to that proceeding").

49.     Kapoor specifically undertook to repay all expenses advanced to him by Insys for his legal defense if it were ultimately determined, by non-appealable judgment, that he was not entitled to indemnification.[32] This undertaking was required by Insys's bylaws and the DGCL before Insys could advance his legal expenses.[33] *See Perryman v. Stimwave Techs. Inc.*, 2020 WL 7240715, at *1 (Del. Ch. Dec. 9, 2020) (noting that the undertaking required by the DGCL "allows the corporation to recoup advanced sums that prove not indemnifiable"), *re-argument denied*, 2021 WL 608266 (Del. Ch. Feb. 17, 2021). Even in the absence of a formal undertaking, Delaware law requires that corporate advancements be returned if the underlying conduct is not indemnifiable. *Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *5 (Del. Ch. June 18, 2002). Pursuant to the undertaking and Delaware law, Kapoor must repay the advances.

50.     Accordingly, Kapoor now must repay the Trustee for each of the Advancements reflected above in paragraph 35 of this opening brief in support of the Motion and exhibits 8–33,

---

[32] Ex. 2 (Indemnity Agreement) § 6.

[33] Ex. 1 (Bylaws) § 45(c); DGCL § 145(e).

as offset by the Trustee's recoveries to date from certain of the transferees (totaling $700,000),[34] for a total of $6,005,886.91.

## VII.  CONCLUSION

51.     For the foregoing reasons, the Trustee respectfully requests that the Court grant summary judgment on Count 6 of the Complaint and enter an order (1) declaring that Kapoor was not entitled to indemnification by Insys, and (2) ordering Kapoor to repay the Advancements to the Trustee, in the amount of $6,005,886.91, plus applicable pre- and post-judgment interest.

---

[34] Ex. 35 (Madden Declaration).

Dated: October 31, 2022
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Matthew O. Talmo*
Derek C. Abbott (No. 3376)
Matthew O. Talmo (No. 6333)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
dabbott@morrisnichols.com
mtalmo@morrisnichols.com

*Counsel to the Trustee of the Insys
Liquidation Trust*

-and-

**REID COLLINS & TSAI LLP**
Eric D. Madden (admitted *pro hac vice*)
Michael J. Yoder (admitted *pro hac vice*)
1601 Elm Street, Suite 4200
Dallas, TX 75201
Telephone: (214) 420-8900
emadden@reidcollins.com
myoder@reidcollins.com

-and-

William T. Reid IV (admitted *pro hac vice*)
Keith Y. Cohan (admitted *pro hac vice*)
Ryan M. Goldstein (admitted *pro hac vice*)
Morgan M. Menchaca (admitted *pro hac vice*)
1301 S. Capital of Texas Hwy, C-300
Austin, TX 78746
Telephone: (512) 647-6100
wreid@reidcollins.com
kcohan@reidcollins.com
rgoldstein@reidcollins.com
mmenchaca@reidcollins.com

*Special Litigation Counsel to the Trustee of
the Insys Liquidation Trust*