# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INSYS THERAPEUTICS, INC., *et al.*, | Case No. 19-11292 (JTD) |
| | (Jointly Administered) |
| Liquidating Debtors. | |
| INSYS LIQUIDATION TRUST, by and through WILLIAM H. HENRICH, as Liquidating Trustee, | |
| Plaintiff, | Adversary No. 21-50557-JTD |
| v. | |
| JOHN N. KAPOOR, | |
| Defendant. | **Re: D.I. Nos. 35 & 41** |

## MEMORANDUM OPINION[1]

William H. Henrich, in his official capacity as Liquidating Trustee (the "**Trustee**") of the Insys Liquidation Trust (the "**Trust**"), commenced this adversary proceeding seeking a judgment ordering defendant John N. Kapoor ("**Kapoor**" or "**Defendant**") to repay advances made to him by Debtors for his legal defense in a criminal action in which he was convicted.[2] The Trustee filed a motion for partial summary judgment on Count VI of the Amended Complaint,[3] which was followed by limited discovery, briefing, and oral argument.[4] For the reasons set forth below, I recommend that the Motion be granted.

## BACKGROUND

Kapoor is the former Chairman and CEO of debtor Insys Therapeutics, Inc. ("**Insys**"). Insys bylaws required the company to advance expenses to its directors or officers in any legal

---

[1] As discussed below, the Court cannot enter a final judgment on the Motion. This Opinion, therefore, constitutes the Court's proposed findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9033.
[2] D.I. 35 (Amended Complaint).
[3] D.I. 41, Trustee's Motion for Partial Summary Judgment (the "**Motion**").
[4] D.I. 44 (Kapoor's Rule 56(d) Motion, D.I. 55 and 61 (Stipulations regarding Discovery), D.I. 62 (Brief in Opposition to Summary Judgment Motion), D.I. 70 (Reply).

proceeding to which the director or officer was a party by reason of the fact that the person is or was a director or officer of Insys.[5] Kapoor also executed an indemnity agreement with Insys (the "**Indemnity Agreement**").[6] The Indemnity Agreement provides that Kapoor is entitled to indemnification and advancement from Insys to the fullest extent permitted by the Delaware General Corporation Law (the "**DGCL**") for any legal proceeding related to his position at Insys. Consistent with the requirements of the DGCL, the Indemnity Agreement also provides that Kapoor is not entitled to indemnification with respect to conduct found in a final judgment to be "in bad faith, knowingly fraudulent or deliberately dishonest or [to have] constituted willful misconduct (but only to the extent of such specific determination)[.]"[7] The Indemnity Agreement further states that Kapoor "acknowledges that the execution and delivery of this agreement shall constitute an undertaking providing that Indemnitee shall, to the fullest extent required by law, repay the advance if and to the extent that it is ultimately determined by a court of competent jurisdiction in a final judgment, not subject to appeal, that [Kapoor] is not entitled to be indemnified by the Company."[8]

On December 10, 2013, Insys received a subpoena from the United States Department of Health and Human Services (the "**HHS Subpoena**") requesting documents related to the sale and marketing of Subsys, Insys' proprietary opioid product.[9]

On February 29, 2016, Kapoor retained Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**") to represent him in connection with an investigation launched by the Department of Justice (the "**DOJ Investigation**"), which arose out of the HHS Subpoena.

---

[5] D.I. 42 (Opening Brief), Ex. 1, § 45.
[6] D.I. 42, Ex. 2.
[7] D.I. 42, Ex. 2.
[8] D.I. 42, Ex. 2.
[9] Amended Complaint, ¶ 35.

As required by the Indemnity Agreement, on June 17, 2016, Insys began making advancements (the "**Advancements**") to Kapoor for his attorneys' fees. The Advancements continued until September 7, 2018.[10]

In December of 2016, several Insys officers and employees, were indicted in a criminal action filed by the U.S. Attorney's Office for the District of Massachusetts captioned *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.) (the "**Criminal Action**"). Kapoor was not initially named in the Criminal Action, but on October 24, 2017, Kapoor was named in a superseding indictment (the "**First Superseding Indictment**").[11] In November 2017, Kapoor retained Ropes & Gray LLP ("**Ropes & Gray**") to represent him as local counsel in the Criminal Action. On September 11, 2018, a grand jury returned a second superseding indictment (the "**Second Superseding Indictment**") modifying the charges filed against Kapoor and others.[12]

On May 2, 2019, Kapoor was convicted of violating 18 U.S.C. 1962(d) by engaging in a racketeering conspiracy.[13] On January 23, 2020, Kapoor was sentenced to 66 months in prison, three years of supervised release, and issued a fine and forfeiture.[14] On August 25, 2021, the First Circuit affirmed the conviction. The Supreme Court denied Kapoor's petition for a writ of certiorari.[15]

Pursuant to its bylaws and the Indemnity Agreement, Insys made more than $6 million in Advancements to Kapoor's criminal defense counsel and their vendors during the DOJ

---

[10] D.I. 42 at 14 and Ex. 7.
[11] *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.), D.I. 183.
[12] *Id.*, D.I. 419.
[13] Amended Complaint, ¶ 60.
[14] D.I. 42, Ex. 4 (Kapoor Judgment).
[15] See generally *United States v. Simon et al.*, 12 F.4th 1 (1st Cir. 2021), *cert. denied sub nom. Kapoor v. United States*, 142 S. Ct. 2811 (2022), and *cert. denied sub nom. Lee v. United States*, 142 S. Ct. 2812 (2022).

Investigation and the Criminal Action.[16]  The Trustee now seeks to recover the Advancements pursuant to the provisions of both the DGCL, Insys' bylaws, and the Indemnity Agreement, that provide that Kapoor is not entitled to indemnification because of his conviction.[17]

## JURISDICTION AND VENUE

This Court has statutory jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(2)(H) and (O).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

Because the motion before me seeks judgment on a claim that arises solely under state law this Court does not have constitutional jurisdiction to enter a final judgment unless the parties consent.  *Stern v. Marshall*, 564 U.S. 462, 469, 494-95 (2011); *Granfinanciera v. Nordberg,* 492 U.S. 33, 56 (1989).  Kapoor does not consent.  Accordingly, and as noted above, this Opinion is not a final judgment but instead constitutes the Court's proposed findings of fact and conclusions of law.

## ANALYSIS

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The Court's role is to "determine whether there is a genuine issue for trial."  *Id.* at 249.  In

---

[16] D.I. 42 at 10 and Ex. 7 (Housley Declaration).  Kapoor has moved to strike paragraph 13 of the Housley Declaration, in which Ms. Housley testifies that the Advancements were made for services rendered on behalf of Kapoor and not on behalf of Insys.  D.I. 66.  As I do not rely on paragraph 13 in resolving the Motion, I will deny the Motion to Strike as moot.

[17] The Complaint also asserts claims for avoidance of the Advancements under the Bankruptcy Code, but the Trustee has indicated that if it is successful on this Motion, which seeks judgment on its common law claims, it will likely dismiss the remainder of the Complaint.

deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). When a movant's evidence demonstrates the lack of a genuine issue of material fact, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 327.

The scope of Delaware statutory law regarding the indemnification of corporate officers and directors was best outlined by Vice Chancellor Glasscock in *Hermelin v. K-V Pharm. Co.*:

> Delaware statutory law is largely enabling with respect to the indemnification rights of corporate officers and directors. The [DGCL] sets two boundaries for indemnification: The statute *requires* a corporation to indemnify a person who was made a party to a proceeding by reason of his service to the corporation and has achieved success on the merits or otherwise in that proceeding. At the other end of the spectrum, the statute *prohibits* a corporation from indemnifying a corporate official who was not successful in the underlying proceeding and has acted, essentially, in bad faith.

54 A.3d 1093, 1094-95 (Del. Ch. 2012).

The Trustee argues that under Delaware law, Insys bylaws, and the Indemnity Agreement, Kapoor is not entitled to be indemnified in connection with the DOJ Investigation or the Criminal Action because of his final, non-appealable criminal conviction. Specifically, he argues that both Section 145(a) of the DGCL and the Indemnity Agreement prohibit indemnification where the indemnitee was not successful in the underlying proceeding and has acted in bad faith. The Trustee contends that Kapoor's conviction satisfies these requirements, pointing to both the fact that Kapoor was found guilty on all charges at trial and the jury's findings that Kapoor deliberately violated the law, which he asserts are incompatible with the suggestion that Kapoor acted in good faith.[18]

---

[18] D.I. 42 at 12-13.

Kapoor makes several arguments in an attempt to establish that there are genuine issues of material fact that preclude the entry of summary judgment in the Trustee's favor. First, he argues that his conviction does not conclusively prove that he is not entitled to at least partial indemnification because the indictment on which he was convicted contained fewer charges than the original indictment against him. In other words, Kapoor argues he was successful with respect to the charges contained in the First Superseding Indictment that were not included in the Second Superseding Indictment.[19] I disagree.

In support of his position, Kapoor relies on the holding in *Merritt-Chapman & Scott Corp. v. Wolfson*, 321 A.2d 138, 140-41 (Del. Super. 1974), where the Court found that claimants were "successful" and entitled to partial indemnification with respect to fees incurred in connection with charges dismissed as part of a plea deal. In *Merritt*, the four claimants were charged with participating in a plan to cause their employer to secretly purchase hundreds of thousands of shares of its own common stock. *Id.* at 140. The indictment contained several counts. Following the first trial, the jury returned guilty verdicts on all charges against all claimants, but the convictions were reversed on appeal. *Id.* Some of the charges were retried, with the jury acquitting on one count, finding defendants guilty on another, and reaching no agreement on the remaining counts. The charges were eventually settled by plea agreement, with some charges dropped in exchange.

---

[19] The Superseding Indictment charged Kapoor with mail fraud conspiracy, wire fraud conspiracy, conspiracy to violate the Anti-Kickback Statute, and racketeering conspiracy with predicates including mail fraud, wire fraud, honest services mail and wire fraud, violations of the Travel Act, and violations of the Controlled Substances Act. *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.), D.I. 183. The Second Superseding Indictment charged Kapoor with a single count of racketeering conspiracy, which included as predicates mail and wire fraud, honest services mail and wire fraud, and violations of the Controlled Substances Act. *United States v. Babich et al.*, No. 1:16-cr-10343-ADB (D. Mass.), D.I. 419.

In opposing claimants' indemnification, the company in *Merritt* argued that the DGCL "requires indemnification only where there has been vindication by a finding or concession of innocence[,]" and that because the charges against claimants were dropped for practical reasons, not because of their innocence, and in light of the conspiracy charged in the indictment, "the judgment of acquittal on count four alone is not vindication." *Id.* at 141. The Court disagreed, stating:

> In a criminal action, any result other than conviction must be considered success. Going behind the result, as MCS attempts, is neither authorized by subsection (c) nor consistent with the presumption of innocence. The statute does not require complete success. It provides for indemnification to the extent of success "in defense of any claim, issue or matter" in an action. Claimants are therefore entitled to partial indemnification if successful on a count of an indictment, which is an independent criminal charge, even if unsuccessful on another, related count.

*Id.* at 141 (emphasis added).

This case is distinguishable for two reasons. First, unlike the claimants in *Merritt*, Kapoor was convicted on the entirety of the charges in the indictment on which he was tried. There were no counts on which he was found not guilty or entered a plea. Second, in relying on the original indictment to demonstrate his purported "success," Kapoor asks me to look beyond the result of the Criminal Action into the circumstances of how it came to be. But this is exactly the type of inquiry that the *Merritt* Court cautioned against.

This prohibition on looking behind the result of the underlying action was reiterated in the second case Kapoor relies on, *Waltuch v. Conticommodity Servs., Inc.* 88 F.3d 87, 96 (2d Cir. 1996). Kapoor cites to *Waltuch* for the proposition that "'success' under § 145(c), does not mean moral exoneration. Escape from an adverse judgment or other detriment, for whatever reason, is determinative." *Id*. While Kapoor is correct on this point, it does not lead to the conclusion that he should be indemnified here. The claimant in *Waltuch* appealed the

7

district court's denial of his request for indemnification on the grounds that he was not "'successful on the merits or otherwise,' because [the company's] settlement payments to the plaintiffs were partially on Waltuch's behalf." *Id.* at 89.  Applying the standard set forth in *Merritt* and refusing to "go behind the result," the Second Circuit reversed and held that the dismissal of the suit without payment by Waltuch constituted the "success" contemplated by Section 145.  In doing so, the Court expanded on the *Merritt* Court's observations regarding what constitutes "success" for purposes of Section 145:

> The agents in *Merritt* rendered consideration--their guilty plea on one count--to achieve the dismissal of the other counts. The court considered these dismissals both "success" and (therefore) "vindication," and refused to "go[] behind the result" or to appraise the reason for the success. In equating "success" with "vindication," the court thus rejected the more expansive view of vindication urged by the corporation. Under *Merritt*'s holding, then, vindication, when used as a synonym for "success" under § 145(c), does not mean moral exoneration. Escape from an adverse judgment or other detriment, for whatever reason, is determinative. **According to *Merritt*, the only question a court may ask is what the result was, not why it was.**

*Id.* at 96 (emphasis added).

While the claimant in *Waltuch* benefited from this results-centered approach to determining what constitutes "success," the approach applies even when doing so is detrimental to the claimant.  Here, the result of both the DOJ Investigation and the Criminal Action was that Kapoor was convicted by a jury on all charges in the indictment on which he was tried.  He did not escape from an adverse judgment but was sentenced to prison and fined.  That is not a success.  How that result came to be is irrelevant.

Kapoor cites to nothing in support of his position that a superseding indictment is the legal equivalent of an acquittal or formal dismissal of charges against a criminal defendant, instead relying only on the corporate dispute in *May v. Bigmar, Inc.*, 838 A.2d 285, 290 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004) for his assertion that he should be considered

8

partially successful. There, in a litigation involving the propriety of certain corporate actions under the DGCL, the court in the underlying action held in the claimant's favor on one issue (holding that the board meeting was validly convened) but against her on the second (holding that the written consent establishing her voting power was not legally effective). While the impact of the litigation was that claimant lost control of the company (an undesired and therefore unsuccessful outcome from her perspective), claimant was nevertheless entitled to partial indemnification because she was successful on one of the claims asserted in the suit. The same cannot be said here.

Kapoor next argues that the Trustee is not entitled to summary judgment because he has failed to submit sufficient evidence that all the fees incurred by Kapoor were for work performed in connection with the Criminal Action. Specifically, Kapoor argues that the Trustee's assertions that the Advancements were not indemnifiable are based solely on the fact that payments were made to the law firms and vendors involved in defending the Criminal Action without any analysis of the actual work performed, which he contends is an insufficient basis for summary judgment. I am not persuaded.

The engagement letters that Kapoor executed with Paul Weiss and Ropes & Gray each provide that the firms were retained to represent only Kapoor and his company EJ Financial Enterprises, Inc., in connection with only the Criminal Action.[20] These letters, along with the firms' invoices,[21] are sufficient evidence to establish that the fees incurred were for work performed in connection with Kapoor's defense in the DOJ Investigation and the Criminal Action. The burden therefore shifts to Kapoor to establish the existence of a genuine issue of material fact that would preclude summary judgment. *Giuliano v. World Fuel Servs. (In re*

---

[20] D.I. 81, Exs. A and B.
[21] See D.I. 64, 65, and 70.

*Evergreen Int'l Aviation, Inc.)*, 2018 Bankr. LEXIS 2540, at *6-7 (Bankr. D. Del. Aug. 22, 2018) ("Once a movant presents sufficient proof in support of the motion, the burden shifts to the nonmoving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate.") (internal quotations omitted).  He has not done so.

While Kapoor argues that entries on the law firms' invoices demonstrate that his counsel was working on matters other than the Criminal Action, including some that he contends were for Insys' benefit, [22] I disagree that these entries have the significance Kapoor assigns to them.  The fact that Kapoor's defense attorneys reviewed filings in the civil cases or consulted with company counsel does nothing to demonstrate that the work was not for Kapoor's benefit.  It is not at all unusual in substantial matters involving large corporations and multiple simultaneous lawsuits for counsel in one matter to communicate with or even strategize with counsel working on related matters (whether representing the same client as well or other co-defendants or even the company) for purposes of informing how to best represent their client.  Unless the law firm has been engaged to represent the client in multiple matters, such work is properly considered part and parcel of a single matter.  The invoice entries that Kapoor has highlighted are not enough to establish that this was not the case here.

---

[22] *See e.g.*, Knights Aff., D.I. 63, Ex. 8 (Paul Weiss invoices containing narratives such as "Review of letter to NJ Division of Consumer Affairs"; "Order to show cause regarding NJ matter"; "Finding public documents for Illinois AG suit"; and "Calls with ... Franc Del Fosse ... re: lawsuit by Illinois Office of the Attorney General"); *Id*., Ex. 4 (Ropes & Gray invoices containing narratives such as "edit memo discussing ... in N.J. civil case"; and "obtain selected documents ... in NJ AG matter for review"); *id*, Ex. 3 (email between Paul Weiss attorneys, Insys's outside counsel, and Franc del Fosse, Insys's in-house counsel, in which Paul Weiss attorneys flag documents for Insys attorneys to review prior to meeting with DOJ); *id.*, Ex. 10 (email with Insys in-house counsel inviting Paul Weiss attorneys to join call regarding Insys's business strategy); *id.*, Ex. 11 (email with Insys in-house counsel asking Paul Weiss attorneys to review Insys's submission of a white paper to the FDA); *id.*, Ex. 12 (email from Paul Weiss attorney to Insys in-house counsel providing estimated cost for legal work and stating that work primarily involved "participating in strategy discussions about how to achieve a settlement for the company with the U.S. Attorney's Office, providing advice about corporate changes, and providing advice about media tactics and strategies") (emphasis added).

*Giuliano v. World Fuel Servs. (In re Evergreen Int'l Aviation, Inc.)*, 2018 Bankr. LEXIS 2540, at *6-7 (To establish a genuine issue of material fact "[t]here must be sufficient evidence upon which a reasonable trier of fact could return a verdict in favor of the nonmoving party.").

Similarly, Kapoor submitted no evidence in support of his argument that the Trustee cannot recoup fees incurred prior to the Second Superseding Indictment. Kapoor contends that work performed before the charges were altered cannot be related to the charge on which he was convicted but relies only on the dates of the indictments in doing so. This is not enough. The modifications made to the charges against Kapoor were not of such a nature that work performed prior to the Second Superseding Indictment would have had no value to Kapoor's ultimate defense.[23]

For these reasons, it is recommended that the Motion be granted and summary judgment on Count VI of the Amended Complaint be entered in the amount of $5,973,078.96.[24]

Dated: August 17, 2023

_____
JOHN T. DORSEY, U.S.B.J.

---

[23] For the same reason, I reject Kapoor's argument that in relying only on the conviction the Trustee has not established that Kapoor had a non-indemnifiable state of mind with respect to all the Advancements the Trustee seeks to recoup. Kapoor simply contends that "Kapoor's attorneys performed work on a whole host of issues and on a variety of matters" and that "his criminal conviction provides no evidence of a non-indemnifiable state of mind with respect to that work," but he offers nothing in support of that contention.

[24] This amount reflects the $6,005,886.91 initially identified by the Trustee less $32,807.95 inadvertently included in that initial amount. See D.I. 42 at 17-18 and D.I. 70 at n.10.